524 S.E.2d 626

**MIBBS, INC., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

No. 25024.

Supreme Court of South Carolina.

Heard Nov. 3, 1999.

Decided Dec. 6, 1999.

602

A. Camden Lewis and Mark W. Hardee, both of Lewis, Babcock & Hawkins, L.L.P.; and Richard A. Harpootlian and Robert G. Rickard, both of Law Offices of Richard A. Harpootlian, P.A.; all of Columbia, for appellant.

James D. Brice and Ronald K. Wray, II, both of Gibbes, Gallivan, White & Boyd, P.A., of Greenville, for respondent.

MOORE, Justice:

Appellant (Mibbs) commenced this action against respondent (Department) to recover for business losses allegedly incurred when cash payouts for video poker were banned in Anderson and Oconee counties pursuant to a November 1994 local option referendum. The trial judge granted Department summary judgment. We affirm.

## FACTS

Mibbs operated two convenience stores, one in Oconee County and one in Anderson County. In July 1993, the legislature enacted S.C.Code Ann. § 12–21–2806 which provided for the local option referendum regarding cash payouts to be held in November 1994. Mibbs subsequently entered into written contracts [1] with Best Amusement, Inc. (Best) for the placement of nine video poker machines in its stores in exchange for a 50% share of the profits for a term of five years.[2] At the time, the Best employee discussed with Mibbs's owner the recent enactment of § 12–21–2806 and its possible effect. Best held the licenses for the machines. Mibbs paid no charge to lease the machines.

In November 1994, Oconee County and Anderson County voted against continuing cash payouts for video poker. On

---

1. On August 10, 1993, Mibbs signed a contract for machines to be placed in its Oconee County store. This contract was superseded by a second contract with the same terms signed on October 21, 1993. The parties signed the same contract applicable to the Anderson County store on October 1, 1993, and July 6, 1994. No reason is given in the record to explain why the superseding contracts were signed. Best's owner stated he did not know of any reason.

2. The contracts provide that Best was entitled to $25 before the split was calculated but Best's owner testified this was not done in practice.

July 1, 1995, cash payouts became illegal and Department revoked Best's licenses for the machines. Mibbs's Anderson County store was sold sometime in 1995; the Oconee County store went out of business in September 1996. In November 1996, this Court struck down the law providing for the local option referendum as unconstitutional. *Martin v. Condon*, 324 S.C. 183, 478 S.E.2d 272 (1996).

Mibbs subsequently commenced this action to recover damages allegedly resulting from the loss of video poker revenue. The complaint alleged a regulatory taking of Mibbs's contracts with Best and an unconstitutional impairment of contract. Department asserted immunity as a defense and moved for summary judgment.

The trial judge found no taking or impairment of contract. In addition, he found Department absolutely immune under S.C.Code Ann. § 15–78–60(4) (Supp.1998) which provides that a government entity is not liable for the enforcement of any law "whether valid or invalid."

## DISCUSSION

■ The trial judge's ruling regarding Department's immunity was not appealed and is the law of the case. *In re Morrison*, 321 S.C. 370, 468 S.E.2d 651 (1996). Since Department is immune, summary judgment was properly granted on all causes of action. Failure to appeal an alternative ground of the judgment will result in affirmance. *South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.*, 316 S.C. 163, 447 S.E.2d 843 (1994); *Biales v. Young*, 315 S.C. 166, 432 S.E.2d 482 (1993). Further, the issues raised regarding the taking and impairment of contract causes of action are completely without merit as discussed below.

### Takings clause

■ Mibbs contends the ban on cash payouts resulted in a regulatory taking of Mibbs's property interest in the contracts in violation of due process.

■ In determining whether governmental regulation violates the takings clause, the Court will consider the economic impact of the regulation, its interference with reasonable

investment-backed expectations, and the character of the governmental action. *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). Where there is no reasonable investment-backed expectation, no taking will be found. *Id.; Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). In this case, there is no "investment-backed" expectation since Mibbs invested nothing in obtaining or performing these contracts.

■ Further, Mibbs complains of no taking except lost business profits. Collateral damages, including lost business profits, are not recoverable on a takings claim. *United States v. General Motors Corp.*, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945) (Fifth Amendment takings clause concerns itself solely with the owner's relation to the physical thing and not with consequential damages); *Carolina Power & Light Co. v. Copeland*, 258 S.C. 206, 188 S.E.2d 188 (1972). Here, the contracts entitled Mibbs to no contractual amount in exchange for placement of the machines in his stores. Had no one played the video poker machines, Mibbs would have earned no profits from cash payouts and would have had no recourse under the contracts. The profits from cash payouts were therefore collateral to the contracts and not recoverable on a takings claim. *General Motors*, 323 U.S. at 378, 65 S.Ct. 357.

■ Moreover, an interest that depends totally upon regulatory licensing is not a property interest that is compensable under the takings clause. *Mitchell Arms, Inc. v. United States*, 7 F.3d 212 (Fed.Cir.1993). *Mitchell* involved the federal government's revocation of import permits for certain assault weapons after the plaintiff had signed contracts with a foreign government to purchase such weapons for resale in this country. The plaintiff claimed its investment-backed reliance on the permits constituted a compensable property interest under the takings clause. The court found the plaintiff's right to sell the weapons was not inherent in its ownership of them because any sale depended upon government import permits. Similarly, Mibbs's contractual right to the profits from cash payouts depends totally upon regulatory licensing and is not inherent in its right to possess the machines. Mibbs's interest in the contracts is therefore not a property interest that is compensable as a taking.

■ Further, Mibbs signed the contracts *after* enactment of the statute allowing for the local option referendum that ultimately prohibited cash payouts. The continuing legality of cash payouts was therefore completely speculative at the time the contracts were signed and Mibbs had no "reasonable expectation" the contracts would retain their value for the remainder of the five-year terms. We find no merit in Mibbs's contention that a taking occurred when the statute providing for the local option referendum was enacted in light of the fact no property right could have existed at that time since the contracts had not yet been signed.[3]

Mibbs has failed to allege a compensable taking and summary judgment was properly granted on this cause of action.

### Impairment of contract

■ A three-step analysis applies to a Contract Clause claim. First, the Court must determine whether the State law has in fact operated as a substantial impairment of a contractual relationship. If the State regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation. Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of contractual rights is based upon reasonable conditions and is of a character appropriate to the public purpose. *Energy Reserves Group, Inc. v. Kansas Power and Light Co.,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983); *see also Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.,* 323 S.C. 532, 476 S.E.2d 481 (1996); *St. Andrews Pub. Serv. District v. Moseley,* 323 S.C. 389, 475 S.E.2d 750 (1996).

■ Mibbs contends because the ban on cash payouts in Anderson and Oconee counties was struck down by this Court

---

3. Any oral agreement the parties may have had previous to the signing of the contracts is irrelevant. Such an agreement would be unenforceable under the Statute of Frauds. S.C.Code Ann. § 32–3–10 (1991) (agreement not to be performed within the space of one year from its making not subject to action for its enforcement). An unenforceable agreement cannot give rise to any vested property right and therefore can be the basis of no takings claim. *See Barnhill v. City of North Myrtle Beach,* 333 S.C. 482, 511 S.E.2d 361 (1999) (no taking where no vested right in property).

as invalid, it is unreasonable regulation and therefore unconstitutionally impaired Mibbs's contracts.

This argument misapprehends the nature of the Contract Clause analysis. The *threshold* inquiry is whether the State law has operated as a substantial impairment of a contractual relationship. *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. 697. We have specifically found no substantial impairment of a contract where the subject of the contract is a highly regulated business whose history makes further regulation foreseeable. *Ken Moorhead Oil, supra.* In this case, further regulation regarding cash payouts was foreseeable, especially in light of the fact Mibbs signed these contracts *after* enactment of the law providing for the local option referendum.

▆▆▆▆ Mibbs complains it could not foresee an *invalid* regulation of cash payouts. The reasonableness of the regulation itself is irrelevant at this point in the inquiry. For purposes of determining whether there was a substantial impairment of contract, we consider whether the law in question altered the reasonable expectations of the parties. *Ken Moorhead Oil, supra.* At the time the contracts were signed, Mibbs could not have reasonably expected *no* regulation would interfere with its profits from cash payouts. Further, we note that in *Martin v. Condon,* we struck down the ban on cash payouts because it did not apply statewide, not because it was substantively invalid regulation.

▆▆▆▆ Moreover, there is no impairment for purposes of a Contract Clause analysis where the statute does not affect a pre-existing contract between private parties. *Ogden v. Saunders,* 25 U.S.(12 Wheat) 213, 6 L.Ed. 606 (1827); *American Nat'l Fire Ins. Co. v. Smith Grading and Paving, Inc.,* 317 S.C. 445, 454 S.E.2d 897 (1995). Here, Mibbs's contracts were entered into after enactment of the legislation it claims created the impairment.[4] We conclude the trial judge properly

---

4. Again, any previous oral arrangement was unenforceable and bestows no rights protected under the Contract Clause. *See Miller v. Rowland,* 999 F.2d 389 (9th Cir.1993) (Contract Clause does not protect unenforceable contract).

granted Department summary judgment on the Contract Clause cause of action.

**AFFIRMED.**

FINNEY, C.J., TOAL, J., Acting Associate Justices WILLIAM T. HOWELL and C. TOLBERT GOOLSBY, Jr., concur.