# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Ralph Wayne Parsons, Jr., and Louise C. Parsons,
Respondents,

v.

John Wieland Homes and Neighborhoods of the
Carolinas, Inc., Wells Fargo Bank, N.A., and South
Carolina Bank & Trust, N.A., Defendants,

Of which John Wieland Homes and Neighborhoods of
the Carolinas, Inc. is Petitioner.

Appellate Case No. 2014-000782

_____

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

_____

Appeal from York County
Jackson Kimball, III, Special Circuit Court Judge

_____

Opinion No. 27655
Heard May 7, 2015 – Filed August 17, 2016

_____

## REVERSED

_____

G. Trenholm Walker and Ian W. Freeman, both of Pratt-
Thomas Walker, PA, of Charleston, for Petitioner.

Herbert W. Hamilton, of Hamilton Martens Ballou & Carroll, LLC, of Rock Hill, for Respondents.

---

**CHIEF JUSTICE PLEICONES:**  We granted certiorari to review a Court of Appeals' decision affirming a circuit court order which denied petitioner's ("JWH") motion to compel arbitration.  *Parsons v. John Wieland Homes and Neighborhoods of the Carolinas, Inc.*, Op. No. 2013-UP-296 (S.C. Ct. App. refiled August 28, 2013).  We reverse.

## FACTS

In 2002, JWH purchased approximately sixty-five acres of land for the development of a residential subdivision.  The land was previously utilized as a textile-related industrial site.  Following the purchase, JWH demolished and removed all visible evidence of the industrial site and removed various underground pipes, valves, and tanks remaining from the industrial operations.

JWH then began selling lots and "spec" homes on the sixty-five acres.  In 2007, respondents ("the Parsons") executed a purchase agreement to buy a home built and sold by JWH ("the Property").[1]  Paragraph 21 of the purchase agreement for the Property states the purchaser has received and read a copy of the JWH warranty ("Warranty") and consented to the terms thereof, including, without limitation, the terms of the arbitration clause.  The Parsons initialed below the paragraph.  Upon executing the purchase agreement, the Parsons were provided a "Homeowner Handbook" containing the Warranty.  The arbitration clause is set forth in paragraph O of the Warranty's General Provisions.  The Parsons signed an acknowledgment of receipt of the handbook dated the same date as the purchase agreement.

In 2008, the Parsons discovered PVC pipes and a metal lined concrete box buried on their Property.  The PVC pipes and box contained "black sludge," which tested

---

[1] The Parsons paid $621,102 for the Property, which was financed by the other defendants named in the lawsuit.

positive as a hazardous substance.  JWH entered a cleanup contract with the South Carolina Department of Health and Environmental Control.  JWH completed and paid for the cleanup per the cleanup contract.[2]

The Parsons claim they were unaware the Property was previously an industrial site and contained hazardous substances.  In 2011, the Parsons filed the present lawsuit alleging JWH breached the purchase agreement by failing to disclose defects with the Property, selling property that was contaminated, and selling property with known underground pipes.  The Parsons further alleged breach of contract, breach of implied warranties, unfair trade practices, negligent misrepresentation, negligence and gross negligence, and fraud.

JWH moved to compel arbitration and dismiss the complaint.  The motion asserted that all of the Parsons' claims arose out of the purchase agreement, and the Parsons clearly agreed that all such disputes would be decided by arbitration.  The circuit court denied the motion and found the arbitration clause was unenforceable for two reasons.

First, the circuit court found that because the arbitration clause was located within the Warranty booklet, its scope was limited to claims under the Warranty.  The circuit court further found that because the Warranty was limited to claims caused by a defect or deficiency in the design or construction of the home, the Parsons' claims fell outside the scope of the arbitration clause, and, thus, the arbitration clause was unenforceable.

Second, the circuit court applied the outrageous torts exception to arbitration enforcement[3] and found that because the Parsons alleged outrageous tortious

---

[2] The cleanup cost JWH approximately $500,000.  In addition to the PVC pipes and box, the cleanup revealed a twelve-inch cast iron pipe associated with the prior industrial site running the length of the Property.  The cleanup further revealed pipes within the foundation of the Parsons' home, some of which were unable to be removed; therefore, they were capped and remain on the Property.

[3] *See*, *e.g.*, *Wachovia Bank, Nat. Ass'n v. Blackburn*, 407 S.C. 321, 755 S.E.2d 437 (2014); *Timmons v. Starkey*, 389 S.C. 375, 698 S.E.2d 809 (2010); *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 689 S.E.2d 602 (2010); *Aiken v. World Fin. Corp. of South Carolina*, 373 S.C. 144, 644 S.E.2d 705 (2007); *Chassereau v. Global Sun Pools, Inc.*, 373 S.C. 168, 644 S.E.2d 718 (2007); *Simpson v. World*

conduct, namely, the intentional and unforeseeable conduct of JWH in failing to disclose concealed contamination on the Property, the arbitration clause was unenforceable.[4]

The Court of Appeals affirmed the circuit court's finding that the scope of the arbitration clause was restricted to Warranty claims and declined to address the circuit court's application of the outrageous torts exception doctrine.

We granted JWH's petition for a writ of certiorari to review the Court of Appeals' decision.

## ISSUE

Did the Court of Appeals err in affirming the circuit court's ruling that the arbitration clause was unenforceable?

## LAW/ANALYSIS

The Court of Appeals found the circuit court correctly determined the arbitration clause was unenforceable. We disagree.

The determination whether a claim is subject to arbitration is reviewed *de novo*. *Gissel v. Hart*, 382 S.C. 235, 240, 676 S.E.2d 320, 323 (2009). Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 22, 644 S.E.2d 663, 667 (2007) (citing *Thornton v. Trident Med. Ctr., L.L.C.*, 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct. App. 2003)).

The policy of the United States and of South Carolina is to favor arbitration of disputes. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 590, 553 S.E.2d 110, 115 (2001). Arbitration is a matter of contract law and general contract principles of state law apply to a court's evaluation of the enforceability of an arbitration clause. *Simpson*, 373 S.C. at 24, 644 S.E.2d at 668. (citations omitted).

---

*Fin. Corp. of South Carolina*, 373 S.C. 178, 644 S.E.2d 723 (2007); *Hatcher v. Edward D. Jones & Co., L.P.*, 379 S.C. 549, 666 S.E.2d 294 (Ct. App. 2008).
[4] We note the circuit court did not explain how the outrageous torts doctrine precluded arbitration of the Parsons' non-tort claims.

**I. Scope**

The Court of Appeals affirmed the trial court's finding that because the arbitration clause was located within the Warranty, the scope of the arbitration clause was limited to claims covered by the Warranty. We hold the Court of Appeals erred in affirming this finding.

To determine whether an arbitration clause applies to a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause. *Zabinski*, 346 S.C. at 597, 553 S.E.2d at 118 (citing *Hinson v. Jusco Co.*, 868 F.Supp. 145 (D.S.C. 1994); *S.C. Pub. Serv. Auth. v. Great W. Coal*, 312 S.C. 559, 437 S.E.2d 22 (1993)). The heavy presumption in favor of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. *Landers v. Fed. Deposit Ins. Corp.*, 402 S.C. 100, 109, 739 S.E.2d 209, 213 (2013) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 94 (4th Cir. 1996) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989))).

Paragraph 21 of the purchase agreement provides, in pertinent part:

> 21. **<u>Warranty and Arbitration</u>**. Purchaser and Seller hereby agree that, in connection with the sale contemplated by this agreement, Purchaser will be enrolled in the John Wieland Home and Neighborhoods 5-20 Extended Warranty program, booklet revision date 04/06 (JWH Warranty), the JWH Warranty being incorporated herein by reference . . . . PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED AND READ A COPY OF THE CURRENT JWH WARRANTY AND CONSENTS TO THE TERMS THEREOF, INCLUDING, WITHOUT LIMITATION, THE BINDING ARBITRATION PROVISIONS CONTAINED THEREIN. . . .

(Capitalization, bold, and underline in original).

Paragraph O of the Warranty provides, in pertinent part:

**Mandatory Binding Arbitration**.  Wieland and Homebuyer(s) will cooperate with one another in avoiding and informally resolving disputes between them. . . .

Any and all unresolved claims or disputes of any kind or nature between [petitioner] and Homebuyer(s) arising out of or relating in any manner to any purchase agreement with Wieland (if any), this warranty, the Home and/or property on which it is constructed, or otherwise, shall be resolved by final and binding arbitration conducted in accordance with this provision, and such resolution shall be final.  This applies only to claims or disputes that arise after the later of: (a) the issuance of the final certificate of the occupancy for the home, or (b) the initial closing of the purchase of the Home by the initial Homebuyer(s).  This specifically includes, without limitation, claims related to any representations, promises or warranties alleged to have been made by Wieland or its representatives; rescission of any contract or agreement; any tort; any implied warranties; any personal injury; and any property damage.

. . . .

WIELAND AND HOMEBUYER(S) HEREBY ACKNOWLEDGE AND AGREE THAT THE ARBITRATION PROCEDURE SET FORTH HEREIN SHALL BE THE SOLE AND EXCLUSIVE REMEDY FOR THE RESOLUTION OF ANY AND ALL DISPUTES ARISING AFTER THE INITIAL CLOSING OF THE PURCHASE OF THE HOME BY THE INITIAL HOMEBUYER(S).  WIELAND AND HOMEBUYERS HEREBY WAIVE ANY AND ALL OTHER RIGHTS AND REMEDIES AT LAW, IN

EQUITY OR OTHERWISE WHICH MIGHT
OTHERWISE HAVE BEEN AVAILABLE TO THEM
IN CONNECTION WITH ANY SUCH DISPUTES.

(Capitalization, bold, and underline in original).

The plain and unambiguous language of the arbitration clause provides that all claims, including ones based in warranty, be subject to arbitration. Accordingly, we find the Court of Appeals erred in affirming the circuit court's finding that because the arbitration clause was located within the Warranty, its scope was limited to claims covered by the Warranty. *See Jackson Mills, Inc. v. BT Capital Corp.*, 312 S.C. 400, 403, 440 S.E.2d 877, 879 (1994) ("Arbitration clauses are separable from the contracts in which they are imbedded." (quoting *Prima Paint Corp. v. Flood & Conklin*, 388 U.S. 395, 402, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967))); *see also Zabinski*, 346 S.C. at 592, 553 S.E.2d at 116 (finding that like other contracts, arbitration clauses will be enforced in accordance with their terms (citing *Volt Info. Scis. Inc. v. Board of Trs.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989))).

## II. Outrageous Torts Exception

In 2007, this Court created the outrageous torts exception doctrine permitting parties whose claims arose out of an opponent's "outrageous" tortious conduct to avoid arbitration. *See generally Aiken v. World Fin. Corp. of South Carolina*, 373 S.C. 144, 644 S.E.2d 705 (2007) (establishing, in South Carolina, the outrageous torts exception to arbitration enforcement). The exception established that outrageous torts, which were unforeseeable to the reasonable consumer and legally distinct from the contractual relationship between the parties, were not subject to arbitration. *See Aiken*, 373 S.C. at 151–52, 644 S.E.2d at 709. While this Court has continued to apply this standalone exception to arbitration enforcement, recent United States Supreme Court precedent requires us to reexamine its viability.

In *AT&T Mobility, L.L.C. v. Concepcion*, the Supreme Court reiterated its position that "courts must place arbitration agreements on equal footing with other contracts, . . . and enforce them according to their terms[.]" 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *Volt Info. Scis, Inc.*, 489 U.S. at 478). The *Concepcion* decision further explained that the Federal Arbitration Act ("FAA") permits arbitration agreements to be invalidated

by "generally applicable contract defenses," such as fraud, duress, or unconscionability, but not by defenses that apply solely to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.[5] *See* 131 S.Ct. at 1746 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (finding courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions); *Perry v. Thomas*, 482 U.S. 483, 492–93, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (finding state law, whether of legislative or judicial origin, is applicable only if it arose to govern issues concerning contract validity, revocability, and enforceability, and state-law principles that take their meaning from the fact that an arbitration agreement is at issue does not comport with the requirements of the FAA) (citation omitted)); *see also Nitro-Lift Techs., L.L.C. v. Howard*, --- U.S. ---, 133 S.Ct. 500, 502, 184 L.Ed.2d 328 (2012) (reiterating that state supreme courts must adhere to United States Supreme Court's interpretations of the FAA).

The Supreme Court recently reconfirmed the obligation state courts have to apply *Concepcion*, and ensure arbitration agreements are "on equal footing with all other contracts." *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("No one denies that lower courts must follow this Court's holding in *Concepcion*. . . . Lower court judges are certainly free to note their disagreement with a decision of this Court. . . But the Supremacy Clause forbids state courts to dissociate themselves from federal law. . . The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it." (citing U.S. Const., Art. VI, cl. 2; *Howlett v. Rose*, 496 U.S. 356, 371 (1990); *Khan v. State Oil Co.*, 93 F.3d 1358, 1363–1364 (CA7 1996), *vacated*, 522 U.S. 3 (1997))). In finding California state courts failed to meet the requirements set forth in *Concepcion*, and, therefore, the arbitration agreement at issue was enforceable, the Supreme Court found, in relevant part:

> [S]everal considerations lead us to conclude that the court's interpretation of this arbitration contract is unique, restricted to that field. . . . The language used by the Court of Appeal focused only on arbitration. . . . Framing that question in such terms, rather than in generally applicable terms, suggests that the Court of

---

[5] It is undisputed that the arbitration clause at issue is governed by the FAA.

> Appeal could well have meant that its holding was
> limited to the specific subject matter of this contract—
> arbitration. . . . [T]here is no other principle invoked by
> the Court of Appeal that suggests that California courts
> would reach the same interpretation of [the phrase at
> issue] in other contexts. . . . The fact that we can find no
> similar case interpreting [the phrase at issue] . . .
> indicates, at the least, that the antidrafter canon would not
> lead California courts to reach a similar conclusion in
> similar cases that do not involve arbitration.

*DIRECTV*, 136 S. Ct. at 469–71 (citing 9 U.S.C. § 2; *Buckeye Check Cashing, Inc.*, 546 U.S. at 443; *Volt Info. Scis, Inc.*, 489 U.S. at 476; *Perry*, 482 U.S. at 493, n.9).

Analogous to *DIRECTV*, the application of the outrageous torts exception in South Carolina is "unique," and "restricted" to the field of arbitration. Comparable to the analysis provided in *DIRECTV* in finding California courts failed to place arbitration on equal footing with other contracts, the language of every outrageous torts exception case published by this Court has focused explicitly on arbitration. Further, comparable to the analysis in *DIRECTV*, this Court has never used the terminology associated with, or applied the principle of, the outrageous torts exception outside the context of arbitration enforcement.[6]  Because the outrageous

---

[6] The dissent argues the "outrageous and unforeseeable tort exception to arbitration" is a general contract principle but fails to cite any cases outside the realm of arbitration where outrageous and unforeseeable conduct has been applied as an exception to contract enforcement.  This exception was created in 2007, and has only been applied not to void a contract itself, but instead to change the forum from arbitration to the courtroom based on the outrageous manner in which the underlying contract was breached.  The *Concepcion* Court specifically addressed the issue of state laws that appear to apply to "any" contract, but in practice have a disproportionate impact on arbitration clauses, and held such disproportionate application "stands as an obstacle to the accomplishment of the FAA's objectives."  Therefore, if the dissent were correct that the outrageous torts exception is a general contract principle, it is so disproportionately applied in South Carolina that it unquestionably stands as an obstacle to the FAA's cited objectives in violation of *Concepcion*.

torts exception is not a general contract principle, but instead one that has been applied only to arbitration clauses, I find the exception inconsistent with *Concepcion* and its supporting federal jurisprudence. Accordingly, to the extent South Carolina cases apply the outrageous torts exception, I would now overrule those cases and find the trial court erred by determining the exception precluded enforcement of the arbitration clause.[7]

---

Additionally, the dissent contends our opinion "fails to accurately relay the facts and holding of [*DIRECTV*]." To clarify, the second and third sentences of the *DIRECTV* opinion reveal that the question before the Supreme Court in *DIRECTV* was decidedly the same question before this Court: "We here consider a California court's refusal to enforce an arbitration provision in a contract. In our view, that decision does not rest 'upon such grounds as exist . . . for the revocation of any contract,' and we consequently set that judgment aside." *See DIRECTV*, 136 S.Ct. at 464. Contrary to the dissent's reliance on one of six grounds provided in *DIRECTV* regarding how the California courts erred, our opinion relies on the grounds which lend general guidance as to determining whether an arbitration clause is being placed on equal footing with all other contracts. Accordingly, because the *DIRECTV* analysis we rely upon is not contingent upon the facts, we need not provide a detailed recitation thereof.

In regard to the dissent's proposition that *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 384 S.E.2d 730 (1989), should be extended to arbitration enforcement, nothing in our opinion impacts a homebuyers rights to sue in warranty or in tort, and we refuse to extend the narrow substantive holdings in *Kennedy* to the issue of arbitration enforcement before the Court in this case.

[7] We note that JWH argues the Court of Appeals erred by failing to address the trial court's ruling as to the outrageous torts exception doctrine. Because the Court of Appeals affirmed the circuit court on the scope issue, we find JWH's argument is without merit. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (citation omitted) (noting an appellate court need not address remaining issues on appeal when the disposition of a prior issue is dispositive). Further, because we find the circuit court erred in its ruling as to the scope of the arbitration clause, we address the outrageous torts issue without a remand to the Court of Appeals in the interest of judicial economy. *See Furtick v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 352 S.C. 594, 599, 576 S.E.2d 146,

## III. Unconscionability

As an additional sustaining ground, the Parsons ask this Court to find the arbitration clause is unconscionable. *Cf. I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 419–20, 526 S.E.2d 716, 723 (2000) (noting the decision to review an additional sustaining ground is discretionary). We find the Parsons' arguments as to unconscionability are without merit. *See Simpson*, 373 at 25, 644 S.E.2d at 668–69 (explaining unconscionability requires courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999))); *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004) (citation omitted) ("Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them.").

## CONCLUSION

We reverse the Court of Appeals' decision upholding the circuit court's finding that because the arbitration clause was located within the Warranty, its scope was limited to the terms of the Warranty. Further, while the majority of this Court finds the outrageous torts exception to arbitration remains viable, I would hold the exception cannot survive in light of *Concepcion*, 131 S.Ct. 1740. Finally, we find the Parsons' unconscionability argument is without merit. Accordingly, we find the Court of Appeals erred in affirming the circuit court's refusal to enforce the arbitration clause.

The Court of Appeals' decision is therefore

**REVERSED.**

**KITTREDGE, J., concurs. HEARN, J., concurring in part and dissenting in part in a separate opinion in which BEATTY, J., concurs. Acting Justice Jean H. Toal, dissenting in a separate opinion.**

---

149 (2003) (addressing the merits of a claim in the interest of judicial economy).

**JUSTICE HEARN**:  With great respect, I concur in result with the majority. However, I write separately to concur in part and dissent in part from both the majority opinion and the dissent.

I agree with the majority that the scope of the arbitration clause covers the claims against JWH.  However, I also agree with the dissent that the outrageous and unforeseeable torts exception remains a viable principle of law after *Concepcion*,[8] because it embodies a generally applicable contract principle: effectuating the intent of the parties.  In my opinion, abolishing the "exception"— allegedly applicable only to arbitration[9]—could lead to absurd results, such as forcing parties to arbitrate behavior that they clearly did not contemplate upon entering the contract or arbitration agreement.  *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) ("Even though there is [a] presumption in favor of arbitration, the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." (citation omitted) (internal quotation and alteration marks omitted)); *see also, e.g.*, *Koon v. Fares*, 379 S.C. 150, 155, 666 S.E.2d 230, 233 (2008) (explaining a contract "interpretation which establishes the more reasonable and probable agreement of the parties should be adopted while an interpretation leading to an absurd result should be avoided"); *cf. Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 609, 663 S.E.2d 484, 488 (2008) (stating the Court will refuse to interpret statutory language in a manner that would lead to an absurd, and clearly uncontemplated, result (citation omitted)).

---

[8] *AT&T Mobility, L.L.C. v. Concepcion*, 563 U.S. 333 (2011).

[9] To the extent the majority may consider this exception only applicable to arbitration, I wish to note my disagreement and clarify my understanding of the concept.  I believe, despite its name, the legal principles underlying the outrageous and unforeseeable torts exception are equally applicable to contracts and arbitration agreements.  Thus, if a litigant files a breach of contract suit for behavior not contemplated by the parties upon entering the contract, I believe this exception would provide the opposing party a defense to the breach of contract claim.  Similarly, if a litigant attempts to defend himself by asserting an arbitration defense to a claim that does not fall within the scope of the arbitration agreement (perhaps because it was not contemplated by the parties upon entering the contract), I likewise believe this exception could provide the opposing party a defense to the demand for arbitration.

Nonetheless, I disagree with the dissent that the outrageous and unforeseeable torts exception applies here to bar JWH's demand for arbitration. In a residential purchase agreement, it is entirely foreseeable that a seller would fail to disclose defects with the property.[10]

More importantly, in examining the scope of arbitration agreements, this Court has traditionally considered whether a "significant relationship" exists between the claims asserted and the contract in which the arbitration clause is contained. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 598, 553 S.E.2d 110, 119 (2001); *see also Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 150, 644 S.E.2d 705, 708 (2007) (stating the significant relationship test is not a mere "but-for" causation standard). Thus, the Court must determine "whether the particular tort claim is so interwoven with the contract that it could not stand alone." *Zabinski*, 346 S.C. at 597 n.4, 553 S.E.2d at 119 n.4. In fact, the Court has specifically stated the outrageous and unforeseeable torts exception sought only "to distinguish those outrageous torts, which although factually related to the performance of the contract, are legally distinct from the contractual relationship between the parties." *Aiken*, 373 S.C. at 152, 644 S.E.2d at 709.

Accordingly, in this instance, I believe the correct inquiry is whether JWH's alleged fraud in failing to disclose the presence of hazardous waste on the property

---

[10] Numerous lawsuits in our state involve a seller's failure to disclose. *See, e.g.*, *Lawson v. Citizens & S. Nat'l Bank of S.C.*, 259 S.C. 477, 193 S.E.2d 124 (1972) (involving a homebuyer's complaint that the seller failed to disclose that the residence's lot was filled with unsuitable material and "capped" with clay); *Cohen v. Blessing*, 259 S.C. 400, 192 S.E.2d 204 (1972) (involving a homebuyer's complaint that the seller deliberately failed to disclose that the residence was infested with insects); *Winters v. Fiddie*, 394 S.C. 629, 716 S.E.2d 316 (Ct. App. 2011) (involving a homebuyer's complaint that the seller failed to disclose the presence of toxic mold in a house prior to closing). As such, it cannot come as a complete shock should a particular seller fail to disclose a defect to a particular buyer. In fact, the General Assembly has expressly provided a remedy in such an event, further supporting the idea that a seller's failure to disclose is a foreseeable, albeit regrettable, possibility. *See, e.g.*, S.C. Code Ann. § 27-50-65 (2007) (permitting recovery of actual damages, court costs, and attorneys' fees against a seller who knowingly fails to disclose "any material information on the disclosure statement that he knows to be false, incomplete, or misleading").

is essentially a freestanding tort that is not significantly related to the sales contract and arbitration agreement between JWH and the Parsons. I would find there is a significant relationship between the claim and the contract in which the arbitration agreement is contained. The Parsons could not bring their claim against JWH absent the sales contract, as the claim is entirely reliant on the parties' statuses under the contract. In other words, absent the sales contract, JWH would be under no duty to disclose these particular defects with the property to the Parsons or any other third-party.

Therefore, I would find the outrageous and unforeseeable torts exception, while a viable principle of law, does not apply to bar JWH's demand for arbitration here due to the significant relationship between the claims and the contract in which the arbitration agreement is contained. Accordingly, I concur in result with the majority to reverse the denial of JWH's motion to compel arbitration.

**BEATTY, J., concurs.**

**ACTING JUSTICE TOAL:** I respectfully dissent. I disagree that the outrageous and unforeseeable tort exception is not a general contract principle. Accordingly, I believe the majority errs in overruling previous South Carolina cases that apply the exception. Moreover, the majority's opinion undermines the protections the Court has previously extended to homebuyers in *Kennedy v. Columbia Lumber & Manufacturing Co.*[11] and its progeny. *See, e.g.*, *Smith v. Breedlove*, 377 S.C. 415, 422–24, 661 S.E.2d 67, 71–72 (2008). Therefore, I dissent.

## I. General Contract Principles

In "overrul[ing] the judiciary's long-standing refusal to enforce agreements to arbitrate," the United States Supreme Court has held numerous times that arbitration agreements must be placed "upon the same footing as [all] other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (citations omitted) (internal quotation marks omitted). Accordingly, the Federal Arbitration Act (FAA)[12] "imposes certain rules of fundamental importance, including the basic [contract] precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt*, 489 U.S. at 479); *see also Volt*, 489 U.S. at 478 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." (internal citations omitted)).[13] Similarly, as with all other contracts, when a court interprets an arbitration agreement, "'the parties' intentions control'" such that the court's interpretation merely "'give[s] effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen*, 559 U.S. at 681–82 (quoting *Volt*, 489 U.S. at 479; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

---

[11] 299 S.C. 335, 384 S.E.2d 730 (1989).

[12] 9 U.S.C. §§ 1–16 (2006).

[13] However, given the strong federal and state policies favoring arbitration, a court should generally compel arbitration "[u]nless [it] can say with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the dispute." *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 491, 689 S.E.2d 602, 603–04 (2010).

As I read our precedents, the so-called "outrageous and unforeseeable tort exception to arbitration" is merely a label for this Court's application of a long-standing contract principle—effectuating the parties' contractual expectations.  In the past, when the Court invoked the exception, it merely recognized that upon executing the arbitration agreement, the parties did not intend to arbitrate claims arising out of the other party's extreme and unforeseeable conduct.  *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 151, 644 S.E.2d 705, 709 (2007) ("Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings."); *see also Landers v. Fed. Deposit Ins. Corp.*, 402 S.C. 100, 115, 739 S.E.2d 209, 217 (2013) ("[E]ven the broadest of [arbitration] clauses have their limitations."); *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 492, 689 S.E.2d 602, 604 (2010).  In other words, absent evidence to the contrary, parties do not intend to arbitrate wholly unexpected, outrageous behavior.  *Timmons v. Starkey*, 389 S.C. 375, 379, 698 S.E.2d 809, 811 (2010) (Toal, C.J., dissenting) ("An arbitration clause does not cover every potential suit between the signing parties; instead, it only applies to those claims foreseeably arising from the contractual relationship.").[14]  Forcing the parties to arbitrate claims based on such behavior would be contrary to their intent in entering the arbitration agreement, and would impose the *court's* will upon the parties.

Accordingly, I disagree with the majority's assertions that the outrageous and unforeseeable tort exception to arbitration is not a general contract principle. In my view, the exception treats arbitration agreements and contracts precisely

---

[14] *Cf. Landers*, 402 S.C. at 115, 739 S.E.2d at 217 (finding claims arbitrable in part because the plaintiff provided a "clear nexus" between the contract, its arbitration clause, and the causes of action, such that they were all significantly related); *Mibbs, Inc. v. S.C. Dep't of Rev.*, 337 S.C. 601, 608, 524 S.E.2d 626, 629 (1999) (finding that contractual duties may be affected by foreseeable actions taken in the future); *S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co.*, 303 S.C. 74, 78–79, 399 S.E.2d 8, 11–12 (Ct. App. 1990) (acknowledging that a party could defend itself from a breach of contract suit in part if a consequence of the breach was unforeseeable).

equally. Specifically, the exception ensures that a court will consider the parties' intentions when it determines the scope of the agreement at issue, be it contract or arbitration agreement. *See Chassereau v. Global Sun Pools, Inc.*, 373 S.C. 168, 172, 644 S.E.2d 718, 720 (2007) ("Although we are constrained to resolve all doubts in favor of arbitration, this is not an absolute truism intended to replace careful judicial analysis. While actions taken in an arrangement such as the one entered into by these parties might have the potential to generate several legal claims and causes of action, we have no doubt that [the plaintiff] did not intend to agree to arbitrate the claims she asserts in the instant case [because those claims are based on the defendant's allegedly outrageous and unforeseeable behavior].");  *cf. Volt*, 489 U.S. at 478 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so . . . ." (citations omitted)).

In fact, many courts have recognized that outrageous and unforeseeable conduct is generally not arbitrable. *See, e.g.*, *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011) (holding that claims of false imprisonment, intentional infliction of emotional distress, spoliation of evidence, invasion of privacy, and fraudulent misrepresentation were outside the scope of an arbitration clause in an employment agreement between the cruise line and a crewmember who claimed she was drugged and raped by fellow crewmembers); *cf. Landers v. Fed. Deposit Ins. Corp.*, 402 S.C. 100, 108, 739 S.E.2d 209, 213 (2013) ("Whether a party has agreed to arbitrate an issue is *a matter of contract interpretation* and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (emphasis added) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960))) (internal marks omitted)). The majority suggests that considering the scope of the arbitration agreement is a new concept "created in 2007," and that South Carolina disproportionately invalidates arbitration agreements based on conduct falling outside the scope of the contract. I strongly disagree with this contention. *Cf. Stolt-Nielsen*, 559 U.S. at 684 (rejecting the view that once an entitlement to arbitration is established, any claim may be arbitrated). Merely because this Court attributed a formal label to the concept of considering the scope of an arbitration agreement is no reason to invalidate the rationale underlying the label.

It appears that the majority approves of considering the parties' intentions in determining the scope of the agreement, but takes issue with the exception because

of its label—the outrageous and unforeseeable tort exception *to arbitration*. However, this label is a misnomer. The analysis underlying the exception— defining the scope of the agreement by effectuating the parties' contractual expectations—is equally applicable to contracts and arbitration agreements.

Accordingly, I disagree that the Court should abolish this analytical process in future cases. Abolishing the outrageous and unforeseeable tort exception effectively places arbitration agreements in a position of vast superiority to all other contracts. In essence, arbitration agreements now become "super contracts," in which the parties' intentions in outlining the scope of their agreement are irrelevant, and courts must now indiscriminately send parties to arbitration regardless of their intentions. As stated previously, this blind imposition of judicial might on the parties not only lacks a legal foundation, but takes the Supreme Court's directives to enforce arbitration agreements to irrational lengths. *See Stolt-Nielsen*, 559 U.S. at 684 ("It falls to courts and arbitrators to give effect to the[] contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: *to give effect to the intent of the parties*." (emphasis added)).[15]

---

[15] In an effort to shore up its analysis, the majority cites to the recent Supreme Court holding in *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463 (2015). However, despite its use of selective quotes from the opinion, the majority fails to accurately relay the facts and holding of that case. As the *Imburgia* opinion sets forth in detail, in 2005, the California Supreme Court held that a waiver of class arbitration in a consumer contract of adhesion is unconscionable under California law, and thus unenforceable. *Id.* at 466 (quoting *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005)). However, in *AT&T Mobility L.L.C. v. Concepcion*, the Supreme Court specifically invalidated California's so-called *Discover Bank* rule, holding that it was preempted by the FAA because it stood "'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *AT&T Mobility L.L.C. v. Concepcion*, 563 U.S. 333, 352 (2011)). Nonetheless, in *Imburgia*, the California Court of Appeal held that California law "'would find the class action waiver unenforceable,'" citing to the *Discover Bank* rule. *Id.* at 467 (quoting *Imburgia v. DIRECTV, Inc.*, 170 Cal. Rptr. 3d 190, 194 (Cal. Ct. App. 2014)).

On appeal, the Supreme Court invalidated the decision of the California Court of Appeal, stating, among various other rationale:

## II. Application

South Carolina courts have applied the outrageous and unforeseeable tort exception sparingly and are reluctant to declare the tortious conduct underlying a lawsuit to be unrelated to the contract containing the arbitration agreement.[16]  In

> Fifth, the Court of Appeal reasoned that invalid state arbitration law, namely the *Discover Bank* rule, maintained legal force despite this Court's holding in *Concepcion*.  The court stated that "[i]f we apply state law alone to the class action waiver, then the waiver is unenforceable."  And at the end of its opinion, it reiterated that "[t]he class action waiver is unenforceable under California law, so the entire arbitration agreement is unconscionable."  But those statements do not describe California law.  *The view that state law retains independent force even after it has been authoritatively invalidated by this Court is one courts are unlikely to accept as a general matter and to apply in other contexts.*

*Imburgia*, 136 S. Ct. at 470 (emphasis added) (internal citations and alteration marks omitted).  Thus, *Imburgia* stands merely for the unsurprising proposition that the Supremacy Clause forbids state courts from ignoring the specific holdings of the Supreme Court.

[16] In fact, this Court has cautioned that the exception should not be used as an "end-run" around arbitration clauses.  *See Partain*, 386 S.C. at 494, 689 S.E.2d at 605.  Only when the parties *truly* and *clearly* did not contemplate arbitrating a particular claim should a court decline to enforce an otherwise proper arbitration agreement on the grounds that the claim is not significantly related to the contract. *Id.* at 494–95, 689 S.E.2d at 605; *compare Landers*, 402 S.C. at 100, 739 S.E.2d at 209 (finding the slander and intentional infliction of emotional distress claims brought by a man who was fired significantly related to his employment contract that specified grounds and remedies for rightful and wrongful termination because the offensive comments related to the man's purported inability to do his job), *with Partain*, 386 S.C. at 488, 689 S.E.2d at 602 (finding that a claim involving a "bait and switch" in relation to a used car purchase was outrageous and unforeseeable and thus was not subject to arbitration), *and Chassereau*, 373 S.C. at 168, 644 S.E.2d at 718 (finding a claim for extensive public harassment of a customer was not significantly related to the contract to pay for a pool, and thus was not subject to arbitration).

determining whether the exception applies, a court should focus on the parties' intent, the foreseeability of a particular claim when the parties entered into the agreement, and whether or not the specific claims fall within the scope of the arbitration agreement, either expressly or because they significantly relate to the contract. *See Chassereau*, 373 S.C. at 172–73, 644 S.E.2d at 720–21.

Here, the gravamen of the complaint is that JWH failed to disclose certain defects with the property, including industrial pipes and a concrete box containing a hazardous substance. As explained further, *infra*, it is unreasonable and unforeseeable that JWH would fail to clean up such extreme pollution on a residential construction site. *Cf. Kennedy*, 299 S.C. at 344, 384 S.E.2d at 736 ("We have made it clear that it would be intolerable to allow builders to place defective and inferior construction into the stream of commerce." (citing *Rogers v. Scyphers*, 251 S.C. 128, 135–36, 161 S.E.2d 81, 84 (1968))). Therefore, it is inconceivable that the parties contemplated claims involving hazardous pollution on the construction site when executing their arbitration agreement. Accordingly, I would not compel arbitration of these particular claims, as doing so would not fulfill the parties' expectations in entering the arbitration agreement.

## III.    *Residential Construction Arbitration Agreements*

Although the primary issue in this appeal involves the enforceability of an arbitration agreement, the entire lawsuit arose due to extreme defects concealed during JWH's construction of a home. Because the case involves residential construction, the protections this Court has previously extended to homebuyers in *Kennedy* and the like impose an extra "gloss" on the relevant analysis, one which the majority overlooks.

South Carolina courts have historically been inclined to expand general contract and tort principles to protect innocent homebuyers. *See, e.g.*, *Kennedy*, 299 S.C. at 343–44, 384 S.E.2d at 735–36; *Lane v. Trenholm Bldg. Co.*, 267 S.C. 497, 501–03, 229 S.E.2d 728, 730–31 (1976) ("Disparity in the law should be founded upon just reason and not the result of adherence to stale principles which do not comport with current social conditions."); *Rogers v. Scyphers*, 251 S.C. 128, 132–34, 135–36, 161 S.E.2d 81, 83, 84–85 (1968). To that end, South Carolina courts embraced the maxim *caveat venditor*, or "seller beware," and abolished the requirement of strict privity between a home purchaser and a homebuilder. *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007); *Kennedy*, 299 S.C. at 343, 344–45, 384 S.E.2d at 735, 736;

*see also Sapp v. Ford Motor Co.*, 386 S.C. 143, 147–48, 687 S.E.2d 47, 49–50 (2009) (discussing *Kennedy* and noting that its holding "followed cases from around the country expanding protections afforded to homebuyers and imposing tort liability on residential homebuilders").  Thus, in cases involving residential construction contracts, general contract and tort principles occasionally give way to the State's dual policies of protecting the homebuyer and making it easier for that buyer to pursue claims against the builder or seller.

Because *Kennedy* and its progeny explicitly apply only to residential construction *contracts*, this Court has not previously had occasion to address how this line of cases applies to residential construction *arbitration agreements*. However, again, the Supreme Court has held numerous times that arbitration agreements must be placed "upon the same footing as [all] other contracts."  *Volt*, 489 U.S. at 478 (citations omitted) (internal quotation marks omitted).  Thus, I conclude that South Carolina's longstanding policy of protecting innocent homebuyers extends to arbitration agreements involving residential construction as well.  *See Perry v. Thomas*, 482 U.S. 483, 492–93 n.9 (1987) ("Thus state law, whether of legislative or judicial origin, is applicable [to arbitration agreements] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. . . .  **A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law**." (bold emphasis added)).[17] Accordingly, as in all other residential construction cases, I would extend this Court's protection to the Parsons, as the innocent homebuyers.[18]

In the arbitration context, I believe this protective "gloss" specifically applies to whether the homebuilder's conduct is outrageous, unforeseeable, and not contemplated by the parties when entering into the residential construction contract.  Thus, as applied here, *Kennedy* and its progeny lead me to find that

---

[17] Were I to conclude that *Kennedy*'s protections did not extend to homebuyers whose contracts involved an arbitration agreement, I would place those arbitration agreements in a position of vast superiority over contracts, rather than treating them equal to contracts.

[18] In failing to extend *Kennedy*'s protection to the Parsons here, the majority opinion undermines our extensive precedent in the residential construction context.

JWH's failure to disclose the extreme pollution and defects with the property was not only unreasonable, but unforeseeable as well. As stated, *supra*, I would therefore refuse to compel arbitration between the parties, as claims based on such outrageous conduct by a homebuilder surely were not contemplated by the parties.

## IV.  *Conclusion*

I believe the outrageous and unforeseeable tort exception to arbitration is merely a label for a general contract principle:  effectuating the contractual expectations of the parties.  Therefore, I would adhere to the Court's previous holdings that the exception may invalidate an arbitration agreement if certain criteria are met.  Further, I would extend the protections of *Kennedy* and its progeny to arbitration agreements involving residential construction.  Accordingly, I dissent.