661 S.E.2d 67

Danielle SMITH, Appellant,

v.

Joe BREEDLOVE, Dryvit Systems, Inc., and H. Merrill Pasco, of whom Joe Breedlove is, Respondent.

Joe Breedlove, Defendant and Cross–Complainant,

v.

Dryvit Systems, Inc. and H. Merrill Pasco, Cross Defendants.

Joe Breedlove, Defendant and Third–Party Plaintiff,

v.

Solak Construction, Inc., JP Construction of South Carolina, Inc., Arcadio Torres, and Stanley C. Fronczak, Third–Party Defendants.

Arcadio Torres, Fourth–Party Plaintiff,

v.

Contractors Specialty Supply, Inc., d/b/a Cota Southeast and Pella Window & Door, LLC, Fourth–Party Defendants.

No. 26471.

Supreme Court of South Carolina.

Submitted March 4, 2008.
Decided April 21, 2008.
Rehearing Denied May 30, 2008.

416

Glynn L. Capell, of Mullen Wylie & Seekings, of Hilton Head Island, for Appellant.

Joseph Ransom Barker, of McNair Law Firm, of Hilton Head Island, for Respondent.

Justice PLEICONES:

This is an appeal from a grant of summary judgment to respondent Joe Breedlove (Breedlove). The suit arose out of the appellant Danielle Smith's (Smith's) purchase of a home from Breedlove that was allegedly defectively constructed. We affirm.

## FACTS

In 1993, Breedlove decided to build a single family residence on a vacant lot he owned in Hilton Head. He had retired from the United States Army in order to help provide care for his son, who suffered from juvenile diabetes. Breedlove taught at a private school for a period of five years, including the time the residence was constructed. Breedlove planned to build the home for himself and his family, and he did not have any agreement or intention to sell the residence.

Breedlove chose not to hire a general contractor, and he entered into a contract with Merrill Pasco (Pasco) for Pasco to provide services as an architect in designing and preparing the plans and specifications for Breedlove's home. Pasco further recommended the services of Stanley Fronczak (Fronczak), a cabinet installer, and Fronczak assisted Breedlove in choosing other residential specialty contractors (contractors) to provide additional services in completing the home.

Although Breedlove had never been employed in the construction industry nor done business as a general contractor, he entered into agreements with various contractors for their services in the construction of the home. Breedlove directly paid the contractors and the materials suppliers.

During the period of construction, Breedlove's name appeared as the owner and general contractor on various documents. These include the application for the building permit, the building permit itself, the application for water and sewer

service, the elevator contract, the proposal for propane gas service, the application for approval and related documents from the neighborhood in which the house was to be located, credit applications, and other documents on which it was necessary for Breedlove to identify a contractor or builder in order to be able to move forward with the construction process.

A certificate of occupancy was issued on July 15, 1994, and it also listed Breedlove as the owner and general contractor. Breedlove and his family moved into the residence, and the evidence showed that the Breedloves intended to stay in that home for the remainder of their lives.

In 1997, Breedlove's son graduated from high school and began college in Atlanta. Breedlove and his wife decided to rent an apartment near the university to provide his son a place where his medical needs would be better met, as opposed to a dormitory setting. Breedlove and his wife spent a large amount of time at the Atlanta apartment and only lived part-time at their Hilton Head residence. It became too expensive and inconvenient to maintain both the Atlanta apartment and their Hilton Head home, and the Breedloves decided to sell the Hilton Head home in 1998.

In July 1998, Breedlove entered into a contract of sale with Smith and her husband, Courtney Hill,[1] for the sale of the residence. The contract provided that the purchasers had inspected the property and were buying the home "as is." Smith stated that the only inspection done before delivery of the deed was performed by Hill, who had previously been involved in constructing homes.

Several years after moving into the home, Smith discovered the residence was partially clad with synthetic stucco known as exterior insulation and finish system (EIFS). She retained a forensic architect, and his investigations revealed numerous defects.

In 2002, Smith filed suit alleging causes of action for negligence and breach of implied warranty of workmanship against Breedlove and Pasco; she also alleged negligence, strict liabil-

---

1. Mr. Hill and Smith have since divorced, and Hill is not a party to this action.

ity, and breach of warranty against the EIFS manufacturer Dryvit Systems (Dryvit). The complaint alleged Breedlove acted as the general contractor during construction of the home and that such construction was performed in a negligent and defective manner.[2]

In 2003, Breedlove filed a motion for summary judgment. His motion was accompanied by his own affidavit in support of the motion, and Smith replied with affidavits and exhibits from Pasco, the forensic architect, and a general contractor she had retained as an expert. The Hon. Curtis Coltrane issued an Order denying Breedlove's motion. No depositions had been taken at the time this motion was argued in 2003.

In 2005, Breedlove again moved for summary judgment, and the circuit court postponed a hearing on the merits to enable the parties to complete discovery. The depositions of Breedlove, Smith, Smith's expert witnesses, Solak, Torres, and Jerry Parker of JP Construction all took place after Breedlove's first motion for summary judgment and before the hearing on his second motion. After a hearing, the Hon. Jackson Gregory granted Breedlove's second motion for summary judgment in 2006.

## ISSUE

Did the circuit court err in granting summary judgment to Breedlove?

## ANALYSIS

■■ A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), SCRCP. On appeal from an order granting summary judgment, the appellate court applies the same standard that governs the trial court.

---

2. In response, Breedlove filed a third-party complaint against the contractors Solak, JP Construction, Torres, and Fronczak. Torres subsequently filed a fourth-party complaint against an additional EIFS manufacturer Contractors Specialty Supply and against the window manufacturer Pella Window and Door.

*David v. McLeod Regl. Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). The appellate court, like the trial court, must view all ambiguities, conclusions, and all inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

Smith first argues that Breedlove's second motion for summary judgment is barred by Rule 43(*l*), SCRCP. We disagree.

Rule 43(*l*), SCRCP, provides, "If any motion be made to any judge and be denied, in whole or in part, or be granted conditionally, no subsequent motion upon the same set of facts shall be made to any other judge in that action." The fact that a different trial judge previously denied a motion for summary judgment does not preclude the moving party from renewing its motion once new evidence is gathered. *Dorrell v. S.C. Dept. of Transp.*, 361 S.C. 312, 325, 605 S.E.2d 12, 19 (2004).

In this case, although the legal basis of Breedlove's motions for summary judgment was the same in 2003 and 2005, considerable discovery had taken place and new evidence had been established. Contrary to Smith's contentions, it does not matter that Smith conducted the discovery or that some of the evidence was arguably favorable to Smith. The rule requires a different "set of facts," which were established due to the substantial amount of discovery that occurred after Breedlove's first summary judgment motion. Accordingly, the circuit court did not err in hearing Breedlove's second motion for summary judgment after discovery had taken place.

On the merits, Smith claims her first cause of action for breach of warranty of workmanlike service is dependent upon Breedlove's status as a general contractor. Specifically, Smith argues that because builders and general contractors impliedly warrant that the work will be done in a workmanlike manner, all she needs to prove to defeat Breedlove's summary judgment motion is that there is a genuine issue of material fact whether Breedlove was a general contractor. We disagree.

Although we agree with Smith that a genuine issue of fact exists in determining whether Breedlove acted as a general contractor, this fact is not "material" insofar as it impacts our analysis. The grant of summary judgment in favor of Breed-

love did not solely result from the finding that Breedlove was not a general contractor, but rather the circuit court determined that the implied warranty of workmanlike service only applies to builders in the business of building new dwellings for sale. Thus, the crucial issue is whether Breedlove, even if deemed a general contractor, can be held liable under an implied warranty of workmanlike service theory where he was not in the business of constructing houses and did not build the home to sell.

A builder who contracts to construct a dwelling impliedly warrants that the work undertaken will be performed in a careful, diligent, workmanlike manner. *Kennedy v. Columbia Lumber & Mfg. Co., Inc.*, 299 S.C. 335, 344, 384 S.E.2d 730, 736 (1989). This is distinct from an implied warranty of habitability, which arises solely out of the sale of the home. *Id.* Although the warranty of workmanlike service arises out of the construction contract to which the builder is a party, a subsequent purchaser may sue a professional builder on the implied warranty of workmanlike service despite the lack of contractual privity. *Id.*

Starting with *Rutledge v. Dodenhoff*, 254 S.C. 407, 175 S.E.2d 792 (1970), the doctrine of caveat emptor has been weakened so that a purchaser of a home may hold the "builder-vendor" [3] liable on the theory of breach of an implied warranty of workmanship. As stated in *Rutledge*, the rationale behind this implied warranty is based on the relative bargaining positions of the parties:

> The rationale of the decisions which hold the builder-vendor of a new house liable on the basis of an implied warranty is that the seller and buyer are not on an equal footing in such a transaction. . . .[T]he primary purpose of the transaction is to provide the purchaser with a habitable dwelling and the transfer of the land is secondary. The seller holds himself out as an expert in such construction and the prospective purchaser, if he buys, is forced to a large extent to rely on the skill of the builder. This is true because the ordinary purchaser is precluded from making a knowledgeable inspection of the completed house not only because of

---

3. A builder-vendor is a party who is engaged in the business of building and selling new dwellings. *Rogers v. Scyphers*, 251 S.C. 128, 161 S.E.2d 81 (1968).

the expense and his unfamiliarity with building construction, but also because the defects are usually hidden rendering inspection practically impossible. Under such circumstances, the purchaser is at the mercy of the builder-vendor. *Rutledge,* 254 S.C. at 413–414, 175 S.E.2d at 795.

The Court later extended the availability of implied warranties of "merchantability" and fitness for an intended purpose to subsequent purchasers. *Terlinde v. Neely,* 275 S.C. 395, 271 S.E.2d 768 (1980). Although the warranty at issue in *Terlinde* is distinguishable from the implied warranty of workmanlike service, the Terlinde Court's reasoning is instructive:

> The extension of implied warranties to subsequent purchasers is based upon sound legal and policy considerations. Respondents constructed the dwelling and, as the builder, held out their expertise to prospective buyers....Furthermore, the character of society has changed such that the ordinary buyer is not in a position to discover hidden defects in a structure, especially at a time when he is provided more elaborate furnishings which tend to obscure the structural integrity of the facility. The fact that the subsequent purchaser did not know the home builder, as did the original purchaser, does not negate the reality of the "holding out" of the builder's expertise and reliance which occurs in the market place.

*Terlinde,* 275 at 397–398, 271 S.E.2d at 769. Thus, the rationale supporting the imposition of liability for breach of an implied warranty of workmanlike service is that the purchaser is forced to rely on the skill of the professional builder. *See Kennedy, supra* (extending reasoning of *Terlinde* to the implied warranty of workmanlike service). The considerations in favor of imposing liability on professional builders and professional general contractors do not favor liability on Breedlove for the alleged breach of the implied warranty of workmanlike service.

Based on the record before us, we do not believe this is a case where an innocent and defenseless purchaser could not protect herself from an experienced and skilled construction professional. Breedlove never held himself out to Smith or anyone else to be a licensed general contractor with expertise in construction. In fact, Smith admitted that she knew around the time of the closing that Breedlove built the house for his

family. Breedlove never made any misrepresentations as to his expertise or involvement with the construction of the home. Smith had every chance to have the residence inspected before delivery of the deed, but she relied on her husband's cursory inspection. Simply put, this was not a one-sided transaction where Smith had no choice but to rely on the construction skill and expertise of Breedlove.

Accordingly, we hold that the circuit court correctly granted summary judgment in favor of Breedlove on Smith's implied warranty claim because he was not in the business of constructing homes and because our policy of protecting purchasers, who must rely on the skill and expertise of professional builders, is not implicated by the facts of this case.

Smith next argues the circuit erred in granting summary judgment on her negligence claim due to its finding that Breedlove owed Smith no duty. We disagree.

The circuit court found that Breedlove did not owe Smith a duty of care in the construction of the home because he did not undertake and agree to construct the residence for Smith or for anyone else. The circuit court held that the undertaking or agreement to construct a dwelling for another is what creates the duty to exercise and use due care in the construction of that dwelling. Accordingly, because Breedlove never agreed to build the home for Smith or anyone else, then no duty arose for which he could be liable for an alleged breach.

We agree with the circuit court that the crucial undisputed fact is that Breedlove, when he constructed the residence, did not build or plan to build the home for anyone but his family. He simply did not owe a duty to any future purchaser when no such sale was reasonably expected. As the Court stated in *Terlinde:*

> The key inquiry is foreseeability, not privity. In our mobile society, it is clearly foreseeable that more than the original purchaser will seek to enjoy the fruits of the builder's efforts. The plaintiffs, being a member of the class for which the home was constructed, are entitled to a duty of care in construction commensurate with industry standards. In the light of the fact that the home was constructed as speculative, the home builder cannot reasonably argue he envisioned anything but a class of purchasers. By placing

this product into the stream of commerce, the builder owes a duty of care to those who will use his product, so as to render him accountable for negligent workmanship.

*Terlinde,* 275 S.C. at 399, 271 S.E.2d at 770.

Because it was not reasonably foreseeable that Breedlove's home would be exposed to a known or speculative "class of purchasers," Breedlove was properly granted summary judgment on Smith's negligence claim. To hold that a duty arose because it was foreseeable that Breedlove would eventually sell the property, in light of the evidence in the record that the sole purpose for construction was as a permanent residence for Breedlove himself, would completely obviate the foreseeability requirement in determining the existence of a duty. In other words, while possible that Breedlove's home would eventually be purchased or occupied by another owner, this remote possibility, under the facts of this case, was not reasonably foreseeable so as to create a duty on behalf of Breedlove. Accordingly, summary judgment was appropriate.

## CONCLUSION

We hold that summary judgment was properly granted in favor of Breedlove on Smith's actions for breach of the implied warranty of workmanlike service and for negligence. The order of the circuit court is

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and BEATTY, JJ., concur.