**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Zachary Leland Moody and Kristina L. Moody,
Appellants,

v.

Gabriela B. Lopez a/k/a Gabriela Baltazar Lopez-Gutierrez, and individual, Leopoldo Vera Hernandez, an individual, Santa Fe Construction, LLC, Juan Carlos Maldonado, an individual, ServPro of Pickens County d/b/a Blue Moon Enterprises, Inc., Scott D. Caulfield, an individual, Keller Williams Western Upstate, The Haro Group of Keller Williams, Creasy Construction, LLC, Harry James Creasy, an individual, and John Allen Drew, an individual, Defendants,

Of Which ServPro of Pickens County d/b/a Blue Moon Enterprises, Inc. and TCT1, LLC d/b/a Keller Williams Western Upstate, are the Respondents.

Appellate Case No. 2023-001529

———

Appeal From Greenville County
J. Derham Cole, Circuit Court Judge
G. D. Morgan, Jr., Circuit Court Judge

———

Unpublished Opinion No. 2025-UP-284
Heard April 17, 2025 – Filed August 6, 2025

———

**AFFIRMED**

Townes Boyd Johnson, III and Christian Hill Thorndike, both of Townes B. Johnson III, LLC, of Greenville, for Appellants.

Robert T. Lyles, Jr. and Allen Leland DuPre, both of Lyles & Associates, LLC, of Sullivan's Island, for Respondent ServPro of Pickens County.

Daniel L. Draisen, of The Injury Law Firm, PC, of Anderson, and John S. Nichols, of Bluestein Thompson Sullivan LLC, of Columbia, both for Respondent TCT1, LLC.

**PER CURIAM:** Appellants Zachary Leland Moody and Kristina L. Moody appeal the trial court's grant of Respondents' motions for summary judgment.[1] As to Respondent ServPro of Pickens County, d/b/a Blue Moon Enterprises, Inc. (Blue Moon), Appellants argue the trial court erred by finding (1) Blue Moon gave no implied warranty as a matter of law, (2) Blue Moon violated no legal duty, (3) Blue Moon was not negligent in its supervision of a former employee, (4) Blue Moon was not vicariously liable for a former employee's torts, (5) the former employee was acting outside the scope of his employment, and (6) the South Carolina Notice and Opportunity to Cure Construction Dwelling Defects Act[2] barred Appellants' claim for completed repairs. As to Respondent TCT1, LLC d/b/a Keller Williams Western Upstate (TCT1), Appellants claim the trial court erred by finding TCT1 neither owed a legal duty to ensure a seller's disclosure statement was complete nor breached said duty if it existed. We affirm.

## FACTS

On April 12, 2017, Appellants purchased a newly constructed residential home from Gabriela B. Lopez for $288,000 on Foxhound Road in Simpsonville, South Carolina (the Foxhound Road home). Nate Emery, a real estate licensee employed by TCT1, served as Appellants' buyers' agent. As required by the Residential Property Condition Disclosure Act[3] (RPCDA), Lopez provided a State

---

[1] The summary judgment motions were granted by separate judges.

[2] S.C. Code Ann. §§ 40-59-810 to -860 (2011).

[3] S.C. Code Ann. §§ 27-50-10 to -110 (2007 & Supp. 2024).

of South Carolina Residential Property Condition Disclosure Statement (disclosure statement) to Emery. Emery shared the form with Appellants, who signed it on January 20, 2017. Lopez did not complete disclosure 7 on the disclosure statement, which refers to the "foundation, slab, fireplaces, chimneys, wood stoves, floors, basement, windows, driveway, storm windows/screens, doors, ceilings, interior walls, exterior walls, sheds, attached garage, carport, patio, deck, walkways, fencing, or other structural components including modifications."

Just over a year after purchasing the Foxhound Road home, issues arose with water penetration and the home's foundation. When routine maintenance did not remedy the issues, Appellants hired a contractor to investigate and repair the problems. The contractor discovered the original builders failed to properly waterproof the foundation and front entryway of the home, failed to install a proper drainage system in front of the home, used incorrect grout, and back-filled the lot with uncompacted dirt full of stumps, construction debris, and other organic matter.

In preparation for this lawsuit, Appellants obtained the permit application for the home, which listed Blue Moon as the contractor and Scott Caufield as the contact person. Caufield had been Blue Moon's production manager and license qualifier until 2016, when he was terminated for making personal charges on his company credit card. As Blue Moon's primary qualifying party, Caufield was authorized to pull permits using Blue Moon's general contractor's license.

Appellants allege Caufield devised a plan with Lopez, Lopez's husband Leopoldo Hernandez, who worked for Santa Fe Construction, and another Santa Fe employee to construct and sell shoddy homes using Blue Moon's license.[4] Appellants claim Blue Moon either knew about the plan or should have known because its employee, contractor's license, and funds were used to construct homes.[5]

On April 28, 2020, Appellants filed this lawsuit against Blue Moon and TCT1, amongst others. Appellants brought causes of action against Blue Moon for conspiracy, breach of implied warranty, negligence, negligent supervision, and

---

[4] Appellants obtained a judgment against Caufield for $297,809.41 in 2020.

[5] Before filing the present lawsuit, Appellants filed a complaint against Blue Moon with the South Carolina Department of Labor, Licensing, and Regulation (SCLLR). Blue Moon cooperated with the investigation and informed SCLLR that Caufield used its license to construct the Foxhound Road home without its knowledge. After investigating, SCLLR dismissed the complaint against Blue Moon.

equitable indemnity. Appellants brought causes of action against TCT1 for negligence in discharging agency duties and breach of fiduciary duty.

Blue Moon filed a motion for summary judgment on the grounds that (1) Appellants had no evidence that Blue Moon participated in civil conspiracy; (2) Blue Moon did not build or sell the Foxhound Road home, which is required for any implied warranty to arise; (3) Appellants had no evidence that Blue Moon violated a legal duty owed to them to support a negligence claim; (4) Appellants were not subjected to a claim by a third-party and as such had no claim for indemnity; and (5) Appellants' claims were barred by the South Carolina Notice and Opportunity to Cure Construction Dwelling Defects Act (Right to Cure Act). The trial court granted the motion and also denied Appellants' motion to alter or amend the judgment.

TCT1 filed a motion for summary judgment on the grounds that (1) TCT1 owed no duty to independently investigate the condition of the property; (2) Appellants acknowledged they read the disclosure statement provided by Lopez and could clearly see that disclosure 7 was left blank; (3) the practical effect of disclosure 7 being left blank was merely that the seller made no representation regarding the relevant conditions; and (4) Appellants made no request for additional information from their agent, and the agent was under no legal obligation to provide any additional information. Appellants filed a cross-motion for summary judgment based upon S.C. Code Ann. § 40-57-5 to -240 (2011 & Supp. 2024), which defines the duties of real estate brokers. The trial court granted TCT1's motion and denied Appellants' motion, finding "there is no legal duty on the buyer's agent to ensure the seller has fully completed the seller's disclosure [statement], and even if there was such a duty, that duty was not breached." Appellants filed a motion to alter or amend the judgment, which the trial court denied.

Appellants filed separate notices of appeal from the circuit court's respective orders denying their respective motions to alter or amend, which this court consolidated into this appeal.

## STANDARD OF REVIEW

"When reviewing a grant of summary judgment, an appellate court applies the same standard used by the trial court." *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 109, 662 S.E.2d 40, 41 (2008). "A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 109–10, 662 S.E.2d at 41 (citing Rule 56(c), SCRCP). "In determining whether any triable issues of fact exist, the

court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 134, 638 S.E.2d 650, 655 (2006). However, "it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023) (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)). "When the [trial] court grants summary judgment on a question of law, we review the ruling de novo." *Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. Builders FirstSource-Se. Grp.*, 413 S.C. 630, 634–35, 776 S.E.2d 434, 437 (Ct. App. 2015).

## LAW/ANALYSIS

### I.      Blue Moon's Motion for Summary Judgment

Blue Moon primarily provides repair and mitigation services to customers whose homes have suffered fire or water damage and has never performed original construction of new residential homes. In an affidavit filed with its motion for summary judgment, Blue Moon's owner, Jeff Smith, stated he was unaware that Caufield used Blue Moon's license to construct the Foxhound Road home. This affidavit further states that Blue Moon did not contract to build the home, did not build the home, did not receive payment for construction of the home, did not sell the home, and did not receive any compensation for the construction or sale of the home. Appellants did not provide any evidence or testimony to refute this affidavit. Thus, the undisputed evidence in the record is that a Blue Moon employee used Blue Moon's general contractor's license to pull a building permit for construction of the Foxhound Road home without Blue Moon's knowledge. As explained below, this is not sufficient to impose any liability on Blue Moon, and the trial court did not err by granting Blue Moon's motion for summary judgment.

#### A. Implied Warranty

Under the implied warranty of workmanlike service, "a builder who contracts to construct a dwelling impliedly warrants that the work undertaken will be performed in a careful, diligent, workmanlike manner." *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 344, 384 S.E.2d 730, 736 (1989). "[T]he rationale supporting the imposition of liability for breach of an implied warranty of workmanlike service is that the purchaser is forced to rely on the skill of the professional builder." *Smith v. Breedlove*, 377 S.C. 415, 423–24, 661 S.E.2d 67, 72 (2008) (holding the circuit court correctly granted summary judgment in favor of a

builder on a breach of an implied warranty claim because the builder "was not in the business of constructing homes" and "never held himself out" as a "licensed general contractor with expertise in construction"). "Although the warranty of workmanlike service arises out of the construction contract to which the builder is a party, a subsequent purchaser may sue a professional builder on the implied warranty of workmanlike service despite the lack of contractual privity." *Id.* at 422, 661 S.E.2d at 71.

Here, Blue Moon has never been in the business of constructing new homes and has never held itself out as a general contractor with expertise in the construction of new homes. *See id.* Additionally, while the record suggests Caufield used Blue Moon's license to pull the building permit, Appellants put forth no evidence that Blue Moon or Caufield actually participated in construction of the home.[6] Because Blue Moon did not construct or contract to construct the home, has never been in the business of constructing new homes, and has never held itself out as an expert in the construction of new homes, Blue Moon is not liable to Appellants for breach of the implied warranty of workmanlike service.

## B. Negligence and Negligent Supervision

The trial court correctly determined that Blue Moon did not owe Appellants any legal duty, which defeats their negligence claim as a matter of law. Additionally, if a duty did exist, the trial court correctly found Blue Moon was neither vicariously liable for Caufield's torts nor negligent in its supervision of Caufield.

To prove negligence, "a plaintiff must show: (1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages." *Doe v. Marion*, 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007). "The absence of any one of these elements renders the cause of action insufficient." *S.C. State Ports Auth. v. Booz–Allen & Hamilton*, 289 S.C. 373, 376, 346 S.E.2d 324, 325 (1986). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence." *Moore v. Weinberg*, 373 S.C. 209, 221, 644 S.E.2d 740, 746 (Ct. App. 2007), *aff'd*, 383 S.C. 583, 681 S.E.2d 875 (2009) (quoting *Bishop v. S.C. Dep't of Mental Health*, 331 S.C. 79, 86,

---

[6] Appellants admit they did not know who participated in the construction of the home when they bought it, nor did they take any steps to ensure it was constructed by a licensed builder.

502 S.E.2d 78, 81 (1998)).  A court must decide, as a matter of law, whether a duty exists.  *Id.*

"[T]he undertaking or agreement to construct a dwelling for another is what creates the duty to exercise and use due care in the construction of that dwelling." *Breedlove*, 377 S.C. at 424, 661 S.E.2d at 72 (adopting the circuit court's holding). "The key inquiry is foreseeability, not privity. . . . By placing [a] product into the stream of commerce, the builder owes a duty of care to those who will use his product, so as to render him accountable for negligent workmanship."  *Id.* at 424– 25, 661 S.E.2d at 72 (quoting *Terlinde v. Neely*, 275 S.C. 395, 399, 271 S.E.2d 768, 770 (1980)).

An employer is vicariously liable for injuries caused by an employee's torts committed within the scope of employment. *Froneberger v. Smith*, 406 S.C. 37, 52, 748 S.E.2d 625, 633 (Ct. App. 2013).  "An act falls within the scope of the [employee]'s employment if it was reasonably necessary to accomplish the purpose of the [employee]'s employment, and it was done in furtherance of the [employer]'s business."  *Id.* (quoting *Wade v. Berkeley Cnty.*, 330 S.C. 311, 319, 498 S.E.2d 684, 688 (Ct. App. 1998)).  "On the other hand, if the [employee] acts for some independent purpose of his own, wholly disconnected with the furtherance of his [employer]'s business, his conduct falls outside the scope of his employment." *Kase v. Ebert*, 392 S.C. 57, 61, 707 S.E.2d 456, 458 (Ct. App. 2011) (quoting *Crittenden v. Thompson-Walker Co.*, 288 S.C. 112, 116, 341 S.E.2d 385, 387 (Ct. App. 1986)).

"Under certain circumstances, an employer is under a duty to exercise reasonable care to control an employee acting outside the scope of his employment." *Degenhart v. Knights of Columbus*, 309 S.C. 114, 116, 420 S.E.2d 495, 496 (1992). A claim for negligent supervision arises when: (1) the employee intentionally harms another while on the employer's premises or while using the employer's chattel, (2) the employer knows or has reason to know of the employer's ability to control the employee, and (3) the employer "knows or should know of the necessity and opportunity for exercising such control."  *See id.* at 116–17, 420 S.E.2d at 496.

Appellants' attempt to derive a legal duty based on the appearance of Blue Moon's name on the building permit must fail because Blue Moon never agreed to construct a dwelling for Appellants.  *See Breedlove*, 377 S.C. at 424, 661 S.E.2d at 72 ("[T]he undertaking or agreement to construct a dwelling for another is what creates the duty to exercise and use due care in the construction of that dwelling."). Undisputed evidence in the record indicates that Blue Moon did not know Caufield used its license to apply for the building permit, and Appellants have offered no

evidence that Blue Moon agreed to build the home for Appellants or for anyone else. Further, Caufield's use of Blue Moon's license to apply for a permit to construct a new home when Blue Moon was not in the business of constructing new homes was "not reasonably foreseeable so as to create a duty" on behalf of Blue Moon. *Id.* at 425, 661 S.E.2d at 73. Therefore, the trial court properly found Blue Moon neither owed nor breached any legal duty, which defeated Appellants' negligence claim.

However, even if a duty existed, the trial court correctly determined Blue Moon is not vicariously liable for any torts committed by Caufield related to the construction of the Foxhound Road home because Caufield did not act within the scope of his employment when he applied for the building permit. Blue Moon does not and has never constructed new homes. Thus, applying for a permit to construct a new residential home was not "reasonably necessary to accomplish the purpose of" Caufield's employment, nor was it "done in furtherance" of Blue Moon's business. *Froneberger*, 406 S.C. at 52, 748 S.E.2d at 633 (quoting *Wade*, 330 S.C. at 319, 498 S.E.2d at 688). Similarly, Blue Moon was not negligent in its supervision of Caufield because Blue Moon did not know and had no reason to know that Caufield misused its license: it is not foreseeable that an employee responsible for directing and reviewing the work performed under his employer's license would go behind the employer's back to use that license for a project wholly removed from the employer's business.[7]

For the above-stated reasons, the trial court properly granted Blue Moon's motion for summary judgment.

### C. Right to Cure Act

Because we affirm the trial court's order, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (appellate court need not address remaining issues when the disposition of another issue is dispositive).

## II. TCT1's Motion for Summary Judgment

The trial court correctly granted TCT1's motion for summary judgment because TCT1 did not owe Appellants a legal duty to ensure the disclosure statement was complete. First, our supreme court recently held the RPCDA does not provide

---

[7] Evidence in the record confirms that a building permit can be pulled using a builder's license without the license holder's knowledge.

for a cause of action against real estate licensees for violation of the Act. *Isaac v. Onions*, Op. No. 28274 (S.C. Sup. Ct. filed Apr. 23, 2025) (Howard Adv. Sh. No. 16 at 7, 16). Thus, regardless of whether TCT1 violated the RPCDA in this case, Appellants may not bring a claim under this statute.

Beyond the RPCDA, any remaining duty related to the disclosure statement is limited to an agent's general duty of disclosure. "A real estate brokerage firm that provides services through an agency agreement for a client is bound by the duties of loyalty, obedience, disclosure, confidentiality, reasonable care, diligence, and accounting . . . ." S.C. Code Ann. § 40-57-350(A) (Supp. 2024). A buyer's agent must "[disclose] to the buyer all material adverse facts concerning the transaction which are actually known to the licensee." § 40-57-350(E)(1)(b)(iii) (Supp. 2024).

Appellants admit they read, examined, and electronically signed the disclosure statement. They do not argue that their agent had knowledge about the property beyond the disclosure statement itself. Instead, Appellants argue that their buyer's agent "failed to inform [them] that the [d]isclosure [s]tatement was incomplete and the potential ramifications thereof" and that "[the owner's] omission in answering [disclosure 7] was a material fact that [the agent] failed to [disclose]." We disagree.

Appellants' agent had no duty to inform Appellants of facts they could have discovered by simply reading the disclosure statement. *See Citizens & S. Nat'l Bank of S.C. v. Lanford*, 313 S.C. 540, 545, 443 S.E.2d 549, 551 (1994) ("The law does not impose a duty . . . to explain to an individual what he could learn from simply reading the document."). Appellants cannot blame their agent for their own failure to examine the statement they signed. *See Regions Bank v. Schmauch*, 354 S.C. 648, 663, 582 S.E.2d 432, 440 (Ct. App. 2003) ("A person signing a document is responsible for reading the document and making sure of its contents."). Real estate licensees must disclose what they know or have reason to suspect, but the duty of disclosure does not require an agent to investigate beyond a disclosure statement to learn if the information presented is misleading, false, or incomplete.[8] Moreover, an

---

[8] This would shift the burden to inspect or investigate from the buyer to the agent, contrary to the statutory scheme. *See, e.g.*, § 27-50-80 ("This article does not limit the obligation of the purchaser to inspect the physical condition of the property . . . . The real estate licensee, whether acting as listing agent or selling agent, has no duty to inspect . . . ."); § 40-57-350(E)(1)(b)(iii) ("Nothing in this chapter may limit a buyer's obligation to inspect the physical condition of the property which the buyer may purchase[.]"); § 40-57-350(G)(l) (Supp. 2024) ("A

owner's failure to fully complete the disclosure statement—i.e., the fact that disclosure 7 was left blank in this case—is not itself a materially adverse fact. To the extent that the disclosure statement hinted there were underlying issues with the home, it was Appellants' duty, alone, to discover these defects. *Hiltabidle*, 381 S.C. at 519, 673 S.E.2d at 832 ("[T]he Legislature places the duty of performing such an inspection or investigation squarely on the shoulders of the buyer.").

In sum, Appellants cannot place the blame on their real estate agent because they "shut their eyes and contract[ed] for the purchase of a house" despite reviewing and signing a disclosure statement with missing disclosures. *See Watts v. Monarch Builders, Inc.*, 272 S.C. 517, 519, 252 S.E.2d 889, 891 (1979). TCT1's agent had no duty to inform Appellants of the content of the disclosure statement they signed, and for this reason, the trial court properly granted TCT1's summary judgment motion.

## CONCLUSION

Accordingly, the trial court's grant of Respondents' motions for summary judgement is

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**

---

licensee is not obligated to discover latent defects . . . ."); *Chastain v. Hiltabidle*, 381 S.C. 508, 519, 673 S.E.2d 826, 832 (Ct. App. 2009) (discussing statutes concerning real estate licensees and stating that they do "not have a duty to inspect or investigate the physical condition of a piece of property for the purpose of confirming or denying statements made by a seller in a disclosure statement"); *id.* ("Rather, the Legislature places the duty of performing such an inspection or investigation squarely on the shoulders of the buyer.").